1  BARRY J. PORTMAN
   Federal Public Defender
2  GEOFFREY A. HANSEN
   Chief Assistant Federal Public Defender
3  19th Floor Federal Building – Box 36106
   450 Golden Gate Avenue
4  San Francisco, CA 94102
   Telephone: (415) 436-7700
5
   Counsel for Defendant Kang
6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )    No. 3 - 07 - 70312 EDL
                                     )
12                   Plaintiff,      )    **DEFENDANT KANG'S PRE-HEARING**
                                     )    **MEMORANDUM RE: DETENTION**
13  vs.                              )    **HEARING PROCEDURE, AND**
                                     )    **MOTION TO DISMISS FOR LACK OF**
14  EDWARD KANG,                     )    **PROBABLE CAUSE**
                                     )
15                   Defendant.      )
    _____)
16

17

18                          **Introduction**

19          This case involves an alleged conspiracy to commit bank robbery. Mr. Kang initially

20  appeared on May 31, 2007, and the Government asked for the defendant's detention. The matter

21  was set for a hearing on June 7, 2007, before Magistrate Judge Zimmerman. At the initial

22  appearance, counsel for Mr. Kang lodged an objection to the Government proceeding by way of

23  proffer at the detention hearing scheduled before Judge Zimmerman. This motion further sets

24  forth the legal grounds for that objection. In essence, the defendant contends that the use of

25  proffers violates both the Sixth Amendment and the Due Process Clause.

26

    DETENTION MEMORANDUM              1

**A.  Hearing Procedures Under the Bail Reform Act of 1984**

The Bail Reform Act of 1984, codified in 18 U.S.C. § 3142, greatly expanded the power of the Government to hold defendants in pretrial detention.  Prior to the passage of the Act, bail served the sole purpose of preventing flight.  *See* Joseph L. Lester, Presumed Innocent, Feared Dangerous: the Eighth Amendment's Right to Bail, 32 N. Ky. L. Rev. 1, 38 (2005).  In passing the Bail Reform Act, Congress intended to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." *United States v. Salerno*, 481 U.S. 739, 742 (1987) (quoting S. Rep. No. 98-225, at 3 (1983), reprinted in 1984 U.S.S.C.A.N. 3182, 3189).  Thus, a court determining whether to release a defendant on bail must now consider not only whether release conditions will "reasonably assure the appearance of the person," but also whether pretrial release will "endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).

In order to detain a defendant before trial, a court "shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  The detention hearing procedure places the burden of proof on the prosecution and affords the defendant certain basic rights, but it does not provide the entire array of procedural safeguards available at trial:

> At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed.  The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.  The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.  The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.

*Id.*  Thus, while the defendant has the right to cross examine adverse witnesses who appear at the hearing, the language of the Act does not address the question of whether the defendant has the

1  right to confront those witnesses the government does not call upon to testify. *See id.* In

2  addition, while it specifically allows a *defendant* to present evidence by way of proffer, the Act is

3  "silent upon the question whether the *Government* may do so." *United States v. Smith*, 79 F.3d

4  1208, 1210 (D.C. Cir. 1996) (emphasis added).

5      Nevertheless, courts which were called upon early in the Act's history to interpret

6  whether the Government could proceed by way of proffer held that the Government could do so.

7  *See id. See also United States v. Gaviria*, 838 F.2d 667 (11th Cir. 1987); *United States v. Martir*,

8  782 F.2d 1141 (2d Cir. 1986); *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986); *United*

9  *States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985). In reaching this conclusion, the courts

10  did not look to the plain text of the Bail Reform Act, but relied on the Act's history, noting that

11  "the Government regularly proceeded by way of proffer under the District of Columbia bail

12  statute that served as the model for the Act. That it could continue to do so under the nationwide

13  Act literally goes without saying." *Smith*, 79 F.3d at 1210 (internal citations omitted).

14      In addition, several courts, including the Ninth Circuit, interpreted the Bail Reform Act so

15  as to deny a defendant an absolute right, at least under the Due Process Clause, to confront and

16  cross-examine witnesses whom the government has not called to testify. *See Winsor*, 785 F.2d at

17  756; *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985); *Smith*, 79 F.3d at 1210. The

18  defendants in these cases argued that due process mandates a right to confront adverse witnesses

19  in detention hearings. *Winsor*, 785 F.2d at 756; *Smith*, 79 F.3d at 1210. The courts rejected

20  these due process challenges by pointing to the limited purpose of detention hearings:

21      A pretrial detention hearing, however, is neither a discovery device for the defense nor a
         trial on the merits. The process that is due is only that which is required by and
22      proportionate to the purpose of the proceeding. That purpose includes neither a reprise of
         all the evidence presented before the grand jury, nor the right to confront non-testifying
23      government witnesses.

24  *Smith*, 79 F.3d at 1210 (internal citations omitted). Similarly, the Court in *Winsor* rejected an

25  argument that "due process requires that a defendant in a pretrial detention hearing be afforded

26  rights of confrontation and cross-examination." 785 F.2d at 756.

1    Although decisions such as *Smith* and *Winsor* appear to limit procedural safeguards

2  under the Bail Reform Act, they do not bar the application of the Sixth Amendment's

3  Confrontation Clause to detention hearings.  First, these decisions came in response to due

4  process challenges and did not address the issue of whether the Sixth Amendment applies in

5  detention hearings.[1]  Courts have recognized the distinction between a right to confrontation that

6  emanates from the Due Process Clauses of the Fifth and Fourteenth Amendments and the Sixth

7  Amendment's Confrontation Clause.  *See United States v. Barraza,* 318 F. Supp.2d 1031, 1033

8  (S.D. Cal. 2004) ("[T]he right to confrontation in a supervised release revocation hearing is a due

9  process, not a Sixth Amendment, right.").  Thus, decisions that limit the *due process* right to

10  confrontation in pre-trial detention hearings have little bearing on the question of whether the

11  *Sixth Amendment* right to confrontation applies.

12    In addition, the *Smith* and *Winsor* line of cases preceded the Supreme Court's decision in

13  *Crawford v. Washington,* 541 U.S. 36 (2004) –  a case which announced a "watershed rule" that

14  revolutionized Confrontation Clause jurisprudence.  *See Bockting v. Bayer*, 399 F.3d 1010, 1019

15  (9th Cir. 2005) ("The difference between pre- and post-*Crawford* Confrontation Clause

16  jurisprudence is not the sort of change that can be dismissed as merely incremental.  Instead, it is

17  an absolute pre-requisite to fundamental fairness.").  Because *Crawford* fundamentally changed

18  the role of the Confrontation Clause in criminal prosecutions, the application of the right to

19  confrontation in detention hearings must be re-examined in light of this decision.

20  **B.  The Supreme Court's Decision in *Crawford v. Washington***

21    The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

22  prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

23  him."  U.S. Const. amend. VI.  Until recently, Confrontation Clause jurisprudence was governed

24

25

26    [1]  Although the defendant in *Smith* cited the Confrontation Clause as well as the Due
Process Clause in making his claim, the Court's opinion never addressed his Sixth Amendment
argument, focusing instead on the due process challenge.  *See* 79 F.3d at 1210.

DETENTION MEMORANDUM                    4

1    by *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980),  which admitted hearsay statements where the

2    declarants were unavailable and the statements bore adequate "indicia of reliability."  Such

3    reliability was inferred where the evidence fell within a "firmly rooted hearsay exception."  *Id.*

4         In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), however, the Supreme Court

5    abandoned the *Roberts* reliability test insofar as it applied to testimonial evidence.  Following a

6    thorough historical analysis of the right to confront adverse witnesses, the *Crawford* Court found

7    that the "the principal evil at which the Confrontation Clause was directed was the civil-law

8    mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against

9    the accused." *Id.* at 50.  The *Roberts* test failed to accomplish the purposes of the Confrontation

10   Clause because it of its unpredictability and its "demonstrated capacity to admit core testimonial

11   statements that the Confrontation Clause plainly meant to exclude," such as "accomplice

12   confessions." *Id.* at 63-64.  Instead of focusing on reliability and "firmly rooted hearsay

13   exceptions," the Court in *Crawford* held that "the Framers would not have allowed admission of

14   *testimonial* statements of a witness who did not appear at trial unless he was unavailable to

15   testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54

16   (emphasis added).  Although the Court did not "spell out a comprehensive definition of

17   'testimonial,'" the term applies "at a minimum to prior testimony at a preliminary hearing, before

18   a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

19        In this district, the Government almost exclusively proceeds at a detention hearing by way

20   of proffer, which is simply another way of saying that it introduces rank hearsay without any

21   attempt to show that the hearsay satisfies a hearsay exception.  Even under the old *Roberts* test,

22   this use of hearsay arguably would be inappropriate – but certainly under *Crawford* the

23   introduction of this hearsay is improper if in fact the Sixth Amendment right to confrontation

24   applies at a detention hearing.

25        The Supreme Court in *Crawford* did not address the question of whether the Sixth

26   Amendment right to confront adverse witnesses applies outside of the trial setting.  The language

DETENTION MEMORANDUM                    5

1   of the Sixth Amendment itself, however, states that the right exists in all "criminal prosecutions,"

2   a phrase which encompasses more than the trial itself.  *See* U.S. Const. amend. VI.*; Cf. United*

3   *States v. Abuhamra,* 389 F.3d 309, 323 (2d Cir. 2004) (Sixth Amendment right to public trial

4   applies to bail hearings).  In addition, several passages of the Constitution refer to "trials" as

5   distinct from "criminal prosecutions."  *See*, *e.g.* U.S. Const. art. III, § 2, cl. 3 ("The *trial* of all

6   Crimes, except in Cases of Impeachment, shall be by jury."); U.S. Const. amend. VI ("In all

7   criminal *prosecutions*, the accused shall enjoy the right to a speedy and public *trial*."); U.S.

8   Const. amend VII ("[T]he right to *trial* by jury shall be preserved.") (emphasis added).  This

9   shows that the Framers did not intend to use the terms "trial" and "criminal prosecution"

10  interchangeably.  "Indeed, the Sixth Amendment's opening phrase, 'in all criminal prosecutions,'

11  seems calculated to reach conduct before and beyond the time and place of a criminal trial."

12  John C. Douglass, Admissibility as Cause and Effect: Considering Affirmative Rights Under the

13  Confrontation Clause, 21 QLR 1047, 1065-66 (2003).   Thus, the Sixth Amendment's

14  Confrontation Clause protects the rights of defendants not only at the trial, but also at all other

15  stages of the "criminal prosecution," including pretrial detention hearings under the Bail Reform

16  Act.[2]  Accordingly, the rules set forth in *Crawford* should apply in detention hearings.

17          The Second Circuit's decision in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir.

18  2004), is instructive in that regard.  There, the court was confronted with the issue whether the

19  Government could proceed in a detention hearing by way of *ex parte* submissions.  When

20  examining the propriety of such submissions, the court discussed both the applicability of the

21

---

22          [2] In *Pennsylvania v. Ritchie,* the Supreme Court stated that "the right to confrontation is a
    *trial* right, designed to prevent improper restriction son the types of questions that defense

23  counsel may ask during cross-examination."  480 U.S. 39, 52 (1987) (emphasis in original).  This
    statement does not suggest, however, that the Confrontation Clause has no applicability in

24  pretrial proceedings.  Rather, the Court in *Ritchie* was merely pointing out that the Confrontation
    Clause is not a "constitutionally compelled rule of pretrial discovery," and that it did not entitle a

25  defendant to examine a Children and Youth Services file in order to obtain information that
    would make cross-examination more effective.  *Id.*  *Ritchie* did not address the question of

26  whether the defendant has a right to cross-examine adverse witnesses in pretrial hearings.

1    Due Process Clause and the Sixth Amendment to detention hearings – and found that both

2    applied equally to bail hearings. With regard to the latter amendment, the court recognized that

3    the Sixth Amendment's guarantee of a public trial on its face only applied to *trials,* but noted that

4    the Supreme Court had nonetheless construed this right expansively to include jury selection, *see*

5    *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501 (1984); suppression hearings,

6    *see Waller v. Georgia,* 467 U.S. 39 (1984); and pre-indictment probable cause hearings, *Press*

7    *Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986).  In light of this authority, the Second

8    Circuit had no problem extending the right to a public trial guaranteed by the Sixth Amendment

9    to bail hearings.  *Abuhamra,* 389 F.3d at 323 ("Bail hearings fit comfortably within the sphere of

10    adversarial proceedings closely related to trial").  If the right to a public trial contained in the

11    Sixth Amendment is applicable to a detention hearing, there is no reason to conclude that any of

12    the other rights contained in the Sixth Amendment, such as the right to confront adverse

13    witnesses, does not extend to bail hearings as well.

14          In fact, the argument in favor of extending the Sixth Amendment's right to confront

15    adverse witnesses to bail hearings is even stronger than are the arguments in favor of extending

16    the right to a public trial to such hearings.  While the Sixth Amendment refers to the right to

17    public *trials*, the right to confront adverse witnesses applies to criminal *prosecutions.*   If the

18    former right extends to bail hearings, then certainly the latter right does as well.  In addition, the

19    entire thrust of the *Crawford* case related to the dangers of having hearsay, and even hearsay

20    which would otherwise come in under a well-established hearsay exception, from being

21    introduced against a defendant at trial.  At a detention hearing, a defendant usually has not been

22    indicted and has fewer of the procedural rights available then does a defendant whose case has

23    proceeded through the system all the way to trial.  Yet the detention hearing can result in exactly

24    the same harm so strenuously condemned by the *Crawford* court – the danger of having a

25    defendant's liberty taken from him or her on the basis of unreliable and untested evidence.

26    Clearly, the right to confront witnesses should be extended to bail hearings.

1    The Government has argued in other cases that the right to confront adverse witnesses

2  under the Sixth Amendment does not apply to detention hearings because detention hearings are

3  "regulatory" in nature, and are not "penal" proceedings.  This claim is misplaced.

4    The Sixth Amendment makes no distinction between "regulatory" or "penal"

5  proceedings; it refers to criminal prosecutions.  It is certainly true that in response to claims that

6  the Bail Reform Act violated the Eight  Amendment's prohibition against cruel and unusual

7  punishment, courts have held that the pretrial detention is not punishment; it does not follow, and

8  certainly no court has held, that a bail hearing is not part of the criminal prosecution.  Indeed, to

9  the extent that the Government has argued that a bail hearing is some form of ancillary civil

10  proceeding not directly involved in the criminal prosecution, that suggestion is belied by the fact

11  that all of the rules and statutes governing detention hearings are contained in the criminal rules

12  and codes.  Thus, there is no civil rule or statute which allows for the detention of a defendant.  If

13  the Government is legally able to obtain the detention of the defendant under some authority

14  contained in the rules regarding civil matters, it should identify those rules to this Court. There

15  are no such rules, and it is frivolous to assert that a bail hearing is in fact a civil matter separate

16  from the criminal prosecution itself.

17    But if the Government is correct in this claim, the defendant would be happy to have the

18  Court construe detention hearings as civil matters.  As such, the defendant would then be free to

19  depose any potential witnesses prior to the detention hearing and to seek other discovery allowed

20  for under the civil rules of procedure. *See* Fed. R. Civ. P 26.

21    There is no real issue that detention hearings are part of the criminal proceedings brought

22  against a defendant where the Sixth Amendment should apply.

23  **C. *Crawford* As Applied To Parole Revocation Proceedings**

24    As is discussed above, the federal courts have not directly addressed the question whether

25  the *Crawford* decision applies to pretrial detention hearings.  Nevertheless, lower court decisions

26  in the somewhat related area of parole and probation revocation hearings show that the question

DETENTION MEMORANDUM                    8

1   about whether *Crawford* extends to these forms of hearings is unsettled.  *Compare United States*

2   *v. Hall*, 419 F.3d 980 (9th Cir. 2005) (holding that *Crawford* does not apply to the admission of

3   hearsay evidence during revocation of supervised release proceedings) *with Ash v. Reilly*, 354 F.

4   Supp. 2d 1 (D.D.C. 2004) (holding that *Crawford* is binding precedent for parole revocation

5   hearings).  These cases are worthy of analysis.

6          Parole revocation proceedings are similar to detention hearings in that neither are part of

7   the trial itself.  Unlike detention hearings, however, "the revocation of parole is *not part of the*

8   *criminal prosecution*," and thus the full panoply of rights due a defendant in such proceeding

9   does not apply to parole revocations.  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (emphasis

10  added).  On the other hand, the defendant in a detention hearing, who has not yet been convicted

11  and is *presumed innocent*, obviously enjoys a stronger right to confront adverse witnesses than

12  the a parolee who has already suffered a conviction.  *See Herrera v. Collins*, 506 U.S. 390, 398

13  (1993) ("A person when first charged with a crime is entitled to a presumption of innocence . . . .

14  Other constitutional provisions also have the effect of ensuring against the risk of convicting an

15  innocent person.").

16         In *Ash v. Reilly*, the court held that a defendant in a parole revocation hearing has a Sixth

17  Amendment right to confront adverse witnesses.  453 F. Supp. 2d 1, 7 (D.D.C. 2004).  The

18  defendant recognizes that several federal courts, including the Ninth Circuit, have disagreed with

19  *Ash.  See, e.g. United States v. Hall*, 419 F.3d 980 (9th Cir. 2005); *United States v. Kirby*, 418

20  F.3d 621 (6th Cir. 2005); *United States v. Martin*, 382 F.3d 840 (8th Cir. 2004); *United States v.*

21  *Aspinall*, 389 F.3d 332 (2d Cir. 2004), *abrogation on other grounds recognized by United States*

22  *v. Fleming*, 397 F.3d 95 (2d Cir. 2005).  However, what is crucial for purposes of this

23  memorandum is the fact that the Ninth Circuit in *Hall* recognized that the Sixth Amendment

24  applies in "criminal prosecutions," and denied Hall's request that he be allowed to confront

25  adverse witnesses as a matter of right *only* because supervised release revocation hearings, like

26  parole and probation revocation hearings, are not part of the "criminal prosecution:"

DETENTION MEMORANDUM                    9

1

2

3

4

> Because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions" the full protection provided to criminal defendants, including the Sixth Amendment right to confrontation, does not apply to them. Rather, a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights.

419 F.3d at 985 (internal citations omitted).

5

6

7

8

9

10

11

12

13

14

15

Therefore, under *Hall*, defendants in detention hearings have a claim of entitlement to the Sixth Amendment confrontation right because detention hearings *are* part of the criminal prosecution. *See* discussion *supra*. *See also, e.g., In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986) ("Moreover, even if plea hearings and sentencing hearings are not considered a part of the trial itself, they are surely as much *an integral part of a criminal prosecution* as are . . . *bail hearings*.") (emphasis added). *See also United States v. Baucum*, 2001 WL 1448604 at 2 (D. Ariz. 2001) ("No one can seriously contend that a detention hearing is not a critical stage of a prosecution where the liberty of a defendant hangs in the balance."). Thus, detention hearings fall within the ambit of the Sixth Amendment's Confrontation Clause, even if proceedings to revoke parole, probation or supervised release do not.

16

**D.    The Sixth Amendment Right to Confrontation, as Interpreted in *Crawford v. Washington*, Must Apply in Detention Hearings Under the Bail Reform Act.**

17

18

19

20

21

As discussed above, pretrial detention hearings under the Bail Reform Act are part of the "criminal prosecution," and defendants in such hearings, therefore, enjoy the protection of the Sixth Amendment. Moreover, the significant liberty interests at stake in detention hearings, as well as the time-honored presumption of innocence, require that defendants in detention hearings be given the right to cross-examine all adverse witnesses as a matter of policy.

22

23

24

25

The Supreme Court has stated that "[a] person when first charged with a crime is entitled to the presumption of innocence." *Herrera v. Collins*, 506 U.S. 390, 398 (1993). The presumption of innocence plays a particularly important role during pretrial detention hearings because of their potential to influence the outcome of a trial:

26

> Jurors may speculate that the accused's pretrial incarceration, although often

DETENTION MEMORANDUM                    10

> the result of his inability to raise bail, is explained by the fact that he poses a
> danger to the community or has a prior criminal record; a significant danger
> is thus created of corruption of the fact finding process through mere suspicion.

*Estelle v. Williams*, 425 U.S. 501, 518 (1975).  In addition, pretrial detention imposes immense

burdens on presumptively innocent defendants – burdens that the courts do not impose lightly:

> The time spent in jail awaiting trial has a detrimental impact on the individual.
> It often means loss of a job; it disrupts family life; and it enforces idleness.
> Most jails offer little or no recreational or rehabilitative programs.  The time
> spent in jail is simply dead time.  Moreover, if a defendant is locked up, he is
> hindered in his ability to gather evidence, contact witnesses, or otherwise prepare
> his defense.  Imposing those consequences on anyone who has not yet been
> convicted is serious.  It is especially unfortunate to impose them on those
> persons who are ultimately found to be innocent.

*Barker v. Wingo*, 407 U.S. 514, 532-33 (1972).  Indeed, the gravity of pretrial detention has led

some commentators to argue that "[t]he defendant's liberty is at stake at a bail hearing much as it

is at trial."  Joseph L. Lester, Presumed Innocent, Feared Dangerous: the Eighth Amendment's

Right to Bail, 32 N. Ky. L. Rev. 1, 45 (2005).

Consequences of such magnitude necessitate strong procedural safeguards in pretrial

detention hearings, and the right to cross-examine adverse witnesses is essential to procedural

fairness.  The Supreme Court has stated that "[t]he Confrontation Clause provides two types of

protections for a criminal defendant: the right physically to face those who testify against him,

and the right to cross examination."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (citing

*Delaware v. Fensterer*, 474 U.S. 15, 18-19 (1985)).  Cross-examination has been described as

"the greatest legal engine ever invented for the discovery of truth."  *California v. Green*, 399

U.S. 149, 158 (1970).  It offers a defendant the "the opportunity to show that a witness is biased,

or the testimony is exaggerated or unbelievable."  *Ritchie*, 480 U.S. at 51-52.  As the Supreme

Court put it, "this type of evidence can make the difference between conviction and acquittal."

*Id.* at 52.  Without the right to confront adverse witnesses, the detention hearing process allows

the incarceration of presumptively innocent defendants based on evidence whose veracity and

reliability have not been tested "in the crucible of cross-examination."  *Crawford*, 541 U.S. at 62.

Thus, defendants facing pretrial detention under the Bail Reform Acts must have the right to confront and cross-examine all adverse witnesses, regardless of whether the government intends to call them to the stand.

### III.    At The Least, Mr. Kang Has The Right To Confront Adverse Witnesses in Detention Hearings Under The Due Process Clause

Even if this Court were to conclude that a bail hearing is not part of a criminal prosecution where the Sixth Amendment right of confrontation applies, Mr. Kang would nonetheless be entitled to confront adverse witnesses under the Due Process Clause.

Mr. Kang recognizes that the Ninth Circuit, soon after the Bail Reform Act was passed, held that the defendant had no absolute due process right to confront adverse witnesses at a detention hearing. *United States v. Winsor*, 785 F2d 755 (9th Cir. 1986).  However, if *Winsor* is read to prohibit a defendant from ever having the right to challenge a Government proffer by insisting that the witness be ordered to appear for cross-examination, the right to cross-examine witnesses contained in the Bail Reform Act would be meaningless because the Government could proceed in all cases by way of proffer only.  It can be argued, then, that Congress's codification of the right of cross-examination reflects its recognition that there will be times that in order to assure the integrity (and thus the constitutionality) of a bail hearing, due process concerns require the production of certain witnesses.  Indeed, some courts have held that when fundamental fairness so requires, a court may order the Government to call witnesses for cross-examination at a detention hearing. *See, e.g. United States v. Hammond,* 44 F. Supp. 2d 743 (D. Md. 1999).

In *Hammond*, the Government proffered a police report, rather than calling the officers themselves, to support an allegation that the defendant had violated 18 U.S.C. § 922(g)(1). *Hammond*, 44 F.Supp.2d at 744-45.  The police report alleged that the officers had been attempting to arrest the defendant when he ran from them, removed a gun from his waistband, and dropped it. *Id.*  The court held that:

> [W]hen the evidence proffered is the uncorroborated statement(s) of one or two police officers who allegedly observed a single act committed by the defendant, and where there is no other evidence offered in support of the eyewitness testimony, the Court should consider the proffer with great care and accord it limited weight . . . . [T]he judicial officer should require the government to present live testimony able to withstand confrontation, long- and well-recognized as the "greatest legal engine ever invented for the discovery of truth."

*Id.* at 746 (citing *California v. Green*, 399 U.S. 149, 158 (1970)).

The Supreme Court, when called upon to determine the validity of the Bail Reform Act, noted that the Act did not violate a defendant's due process rights *only* because of the procedural safeguards which assured that the detention decision was accurate. *See Salerno*, 481 U.S. at 751. The Court in *Salerno* reiterated that the Bail Reform Act conformed with the requirements of due process only because, "[i]n a *full-blown adversary hearing*, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Salerno*, 481 U.S. at 750 (emphasis added).

The Supreme Court has never passed upon the issue whether a bare proffer of a witness statement at a detention hearing would satisfy the Due Process Clause. However, various courts, including the Ninth Circuit, have held in analogous situations that such a proffer would not satisfy the due process. *See, e.g., Barnes v. Johnson*, 184 F.3d 451 (5th Cir. 1999) (Due Process Clause requires certain minimal safeguards to protect the limited liberty interest at stake in a parole revocation hearing, including "the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation"); *United States v. Simmons*, 812 F.2d 561 (9th Cir. 1987) (probationers and parolees have a right to confront and cross-examine adverse witnesses unless a judge finds good cause not to allow confrontation); *United States v. Martin*, 984 F.2d 308 (9th Cir. 1993) (the Due Process Clause requires a balancing test for parole and probation revocation hearings); *United States v. Kindred*, 918 F.2d 485 (5th Cir. 1990) (same); *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) (same);

DETENTION MEMORANDUM                13

1    *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (same); *United States v. Myers*, 896 F.

2    Supp. 1029 (D. Or. 1995) (police reports insufficient; defendant's interest in cross-examination

3    outweighed the Government's interest in not producing a witness under the balancing test

4    required by the Due Process Clause); *Downie v. Klincar*, 759 F. Supp. 425 (N.D. Ill. 1991) (the

5    Due Process Clause requires some right to confrontation in parole revocation hearings).

6         The Ninth Circuit's decision in *United States v. Hall,* 419 F.3d 980 (9th Cir. 2005), and

7    the decision it rested upon, *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999), are highly

8    relevant.  As noted above, the issue in *Hall* was whether the defendant in a supervised release

9    violation hearing had the right under the Sixth Amendment to confront adverse witnesses.

10   Although the court noted that he did not have such a right because the supervised release hearing

11   was not part of the criminal prosecution, the court nonetheless held that the defendant had a due

12   process right to confront some witnesses.  *Id.* at 986.  This ruling was based on the Ninth

13   Circuit's earlier decision in *Comito*.

14        The issue before the court in *Comito* was whether the introduction of hearsay evidence in

15   a supervised release violation hearing satisfied the defendant's due process right to confront

16   adverse witnesses.  The facts of the case revealed that the defendant had been charged with

17   various supervised release violations, one of which was based upon statements allegedly made by

18   the defendant's ex-girlfriend to a probation officer that the defendant had engaged in fraudulent

19   behavior.  *Id.* at 1168.  At the district court's revocation hearing,  the court allowed the

20   Government to introduce the fraud allegations through the testimony of the probation officer,

21   rather than the girlfriend herself.  *Id.*  The defendant objected, claiming that his right to confront

22   adverse witnesses was violated by the allowance of this hearsay testimony. *Id.*

23        The court agreed with the defendant and reversed the revocation order.  The court first

24   concluded that a defendant had a limited due process right to confront adverse witnesses at a

25   supervised release revocation proceeding, just as a defendant had such a right in a probation and

26   parole revocation hearing.  *Id.* at 1170.  While the court acknowledged that the right to confront

1    adverse witnesses was not absolute, and could be circumvented by a showing by the Government

2    that there was good cause not to call a given witness, the question whether the Government

3    satisfied the good cause test in turn depended upon a balancing test.  *Id*. at 1171-72.  This

4    balancing test required the court to weigh  the significance of the defendant's right to

5    confrontation against the Government's explanation as to why the witness could not, or was not,

6    called at the hearing. *Id.*

7         Applying that test to the facts before it, the court in *Comito* determined that the

8    statements of the defendant's girlfriend that the defendant had engaged in criminal activity were

9    crucial to the revocation determination.  *Id*. at 1171.  Moreover, because the statements by the

10   girlfriend to the probation officer were unsworn hearsay statements, they were, as the court put it,

11   "the least reliable type of hearsay." *Id.*  Thus, the defendant's "interest in asserting his right to

12   confrontation [was] at its apogee." *Id.*  Further, the court concluded that the Government had not

13   shown good cause for its failure to produce the ex-girlfriend at the hearing.  Therefore, the court

14   determined that the defendant's constitutional rights had been violated.  *Id.* at 1172.

15        The importance of *Comito* to the issue of what procedural rights a defendant possesses at

16   a bail hearing cannot be over-emphasized.  *Comito* involved a supervised release violation

17   proceeding, where a defendant has already been convicted of a crime and thus had a limited

18   liberty interest.  In contrast, bail hearings involve the freedom of presumptively innocent

19   individuals.  Not only is a defendant's liberty interest stronger in bail proceedings, but the

20   standard of proof is higher; unlike a revocation proceeding, where the standard of proof is a

21   preponderance of evidence, the standard of proof at a detention hearing is clear and convincing

22   evidence, at least with respect to the dangerousness prong of the detention statute.  Thus, it is

23   clear under the reasoning of *Comito* that a mere proffer about a given witness's  testimony at a

24   detention hearing violates the Due Process Clause.

25        Mr. Kang again recognizes that there is a tension between *Winsor* and the *Comito* line of

26   cases with respect to the due process rights of individuals at detention hearings.  He submits,

however, that the two cases can be easily reconciled through a ruling that although the due

process right to confront adverse witnesses is not absolute, that right may only be denied in

situations where the Government satisfies the balancing test set forth in *Comito.*

**IV.    Even If The Production Of An Adverse Witness Is Discretionary, That Discretion
Should Be Exercised In Favor Of Ordering The Adverse Witnesses To Appear**

There are certainly cases which were decided before *Crawford, Hall* and *Comito* which

hold that the decision whether to require the production of witnesses by the Government at a

detention hearing is an issue to be left to the sound discretion of the Court. *See, e.g., United

States v. Gaviria,* 828 F.2d 667, 670 (11th Cir. 1987). As noted above, however, *Crawford*

changed the landscape with respect to confrontation rights and held that the right to

confrontation, at least with regard to witnesses who provide testimonial evidence, is absolute.

*Hall,* in turn, suggests that if the court has discretion whether to require the production of

witnesses, that discretion cannot and should not be exercised without a careful balancing of the

factors set forth in *Comito.* But assuming those cases do not create the rights that Mr. Kang

claims he has with respect to detention hearings, there is absolutely no issue but that this Court

could order the Government to produce witnesses in the exercise of its discretion. Mr. Kang

suggests that this Court should do so for a number of reasons.

Outside of the fact that this Court would not be forced to decide the constitutional issues

raised above if it decided to order the Government to produce any witness it plans to rely upon to

secure the defendant's detention, it needs little emphasis that this is a serious case, and any

doubts about what process the defendant should be due must be resolved in favor of Mr. Kang.

The Government bears the burden of proving that the defendant is a flight risk by a

preponderance of evidence and danger by clear and convincing evidence. Thus, the Government

must carry its burden through the use of witnesses and exhibits, and the defendant must be

afforded the right to challenge that evidence.

For all of these reasons, the Court must order the Government to produce witnesses

subject to cross examination at the detention hearing.  This request is particularly directed at any police witnesses and victims whose claims about the defendant will be referenced at the hearing.

**V.    The Complaint Must Be Dismissed Because It Fails to State Probable Cause That Mr. Kang Committed An Offense**

The complaint in this matter fails to state probable cause with regard to Mr. Kang and must be dismissed.  A fair reading of the complaint indicates that agents suspected co-defendant Johnson of being involved in some bay area bank robberies, and began to follow him.  Although they saw Mr. Johnson allegedly "case" some banks, there is no claim that Mr. Kang was with him during those activities.[3]   On May 30, 2007 the agents saw Mr. Johnson drive a Honda from his girlfriend's house to a parking lot, with a white SUV driving "in tandem" with the Honda "during at least part of the drive."[4]   At the parking lot, Johnson parked his car and went over to the SUV with a bag in his hand.  As the SUV began to drive away, Johnson apparently began to change clothes, although the nature of Johnson's activities is not explained.[5]   The SUV was stopped, and  Mr. Kang, who was driving the SUV, was arrested.  Only after the stop was it discovered that the bag carried by Johnson contained a gun, a mask, a cap and gloves.  There is no suggestion that the bag was opened in front of Mr. Kang.

In essence, agents saw Johnson get into Mr. Kang's car and begin to change some of his clothes.  No other evidence suggests that Mr. Kang conspired with Johnson to rob the bank.

The complaint clearly fails to contain facts supporting a finding that there is probable cause to believe that Mr. Kang conspired to commit bank robbery.  The complaint must be dismissed as a result.

---

[3]  Nor are the activities described in enough detail for this Court to be able to independently determine whether the agent's assertions are valid.

[4]  There is no clear explanation in the complaint what "part of the drive" means.

[5]  It is unclear, for example, whether Johnson changed a hat he was wearing, a jacket, his shoes, or a shirt and pants.

DETENTION MEMORANDUM                    17

1  Dated: May 31, 2007

2

3                                    Respectfully submitted,

4

5                                    BARRY J. PORTMAN
                                     Federal Public Defender
6
                                            /S/
7
                                     GEOFFREY A. HANSEN
8                                    Chief Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DETENTION MEMORANDUM                   18