1 | BARRY J. PORTMAN
Federal Public Defender
2 | GEOFFREY A. HANSEN
Chief Assistant Federal Public Defender
3 | 19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
4 | San Francisco, CA 94102
Telephone: (415) 436-7700
5
Counsel for Defendant Kang
6
7
8           IN THE UNITED STATES DISTRICT COURT
9           FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11 | UNITED STATES OF AMERICA,     )     No. CR 3 - 07- 70312 EDL (BZ)
                                  )
12 |            Plaintiff,         )     **DEFENDANT KANG'S REPLY TO**
                                  )     **GOVERNMENT'S OPPOSITION TO**
13 | vs.                           )     **PRE-HEARING MEMORANDUM RE:**
                                  )     **DETENTION HEARING PROCEDURE**
14 | EDWARD SANG KANG,             )
                                  )
15 |            Defendant.        )
   |_____)
16

           The Government begins its reply to the defendant's motion to be granted the right
17
to confront adverse witnesses at the detention hearing by arguing that due to the Ninth Circuit's
18
decision in *United States v. Winsor,* 785 F.2d 755 (9th Cir. 1986), it may proceed by way of
19
proffer at a detention hearing; as the Government puts it, the issue "has been settled law for over
20
20 years." Gov. Opp. at 2. The problem with this somewhat simplistic reasoning is that *Ohio v.*
21
*Roberts,* 448 U.S. 56 (1980), which denied a defendant the Sixth Amendment right to confront
22
adverse witnesses if a hearsay exception applied to the witness statement, was "settled law" for
23
over 20 years until the Supreme Court decided *Crawford v. Washington,* 124 S.Ct. 1354 (2004).
24
In addition, *Winsor* predates the Ninth Circuit's decisions in both *United States v. Comito*, 177
25
F.3d 1166 (9th Cir. 1999), and *United States v. Hall*, 419 F.3d 980 (9th Cir. 2005), both of which
26

DETENTION MEMORANDUM                    1

create a new and much more detailed constitutional analysis of a defendant's due process right to confront adverse witnesses in criminal proceedings.

*Winsor* is certainly of questionable validity in light of these three decisions, and the defendant stands by his arguments distinguishing *Winsor* set forth in his original papers. Proffers are simply no longer acceptable substitutes for live testimony in detention hearings, and this Court must look at recent Supreme Court and Ninth Circuit decisions to decide the issue presented by the defendant here.

**A. Confrontation Clause**

To its credit, the Government does not completely rely on *Winsor* to respond to the defendant's Sixth Amendment and due process arguments. Regarding Mr. Bibb's claim that under *Crawford* the defendant has the right to confront adverse witnesses, the Government claims first that other Magistrate Judges in this district have rejected this same claim in other proceedings. This assertion is true, but it does not mean that the decisions were correctly reasoned, nor have any been published.[1] Second, the Government again resorts to an oft-made and totally misplaced argument that detention hearings are "regulatory" and not "penal," and thus the Sixth Amendment does not apply. The Government refers in part to an unpublished decision by Judge LaPorte in *United States v. Henderson,* where she cites *United States v. Perry,* 788 F.2d 100, 117 (3d Cir. 1986), for the proposition that "commitment on the basis of dangerousness to the community is civil, not criminal."

It is certainly true that when various courts were first confronted with arguments that detention hearings resulted in pretrial punishment of a defendant in violation of the *Eighth Amendment,* many of those courts ruled that the act of detention was a civil commitment and not "punishment" for purposes of the Eighth Amendment. But those rulings have nothing to do with

---

[1] At least two other Magistrate Judges have ruled that a defendant does not have a right to confront adverse witnesses under the Confrontation Clause. As the Court can see from Judge Chen's unpublished decision in *United States v. Wade*, attached to the Government's reply, Judge Chen has concluded that there is a due process right to confront adverse witnesses.

DETENTION MEMORANDUM                    2

the issue whether a detention hearing is part of a criminal prosecution for purposes of the *Sixth Amendment*. What exactly does the Government mean when it says that a detention hearing is a "regulatory" or "civil" proceeding?" That it is a civil matter divorced from the criminal case? If so, then the defendant accepts the Government's argument, and the defendant will notice depositions before the detention hearing in conformance with civil procedures. Of course, as noted in Mr. Kang's original papers, all of the rules and statutes governing detention hearings are contained in the criminal codes and rules of procedure, which suggests that the hearings are in fact part of the criminal prosecution, which in turn means that the Sixth Amendment is applicable. Again, if the Government is correct that a detention hearing is a special form of administrative/civil proceeding, then it should point to where in the APA or civil rules such hearings are addressed. There are no such rules, because the court decisions referring to the "regulatory" nature of detention decisions refer to the *characterization of the act of detention*, and have nothing to do with the *procedural rights* afforded defendants at these hearings. Detention hearings are part of the criminal prosecution, and are not ancillary regulatory proceedings.

The Government refers this Court to Judge LaPorte's further ruling in *Henderson* that a defendant has no Sixth Amendment right to confront witnesses because the Ninth Circuit has "squarely" decided the Sixth Amendment issue raised above.

Judge LaPorte's assertion is not exactly true, considering the cases she relied upon. Both *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986), and the case it relies upon, *United States v. Cardenas*, 784 F.2d 937, 938 (9th Cir. 1986), addressed due process claims which were raised by the defendant – not Sixth Amendment claims. Moreover, both cases pre-date the *Crawford* decision. Thus, neither case is direct authority rejecting the arguments presented above.

The third case cited by Judge LaPorte, *United States v. Littlesun*, 444 F.3d 1196 (9th Cir. 2006), is more interesting. *Littlesun* addresses the issue whether a defendant has the right to confront adverse witnesses at a sentencing hearing, and concluded that no such right existed. However, the Court was careful to note that "Littlesun's argument nonetheless has some force,"

DETENTION MEMORANDUM            3

1  but was controlled by the Supreme Court's decision in *Williams v. New York*, 337 U.S. 241
2  (1949): "... it is not for us to overrule the Supreme Court's decision in *Williams*." *Littlesun,* 444
3  F.3d at 1199-1200.
4        Here, no Supreme Court decision addresses the issue whether the Confrontation Clause
5  applies to detention hearings.  Thus, this Court is free to address the issues raised by Mr. Kang.[2]
6      **B. Due Process**
7        With respect to the defendant's due process claims, aside from its *Winsor* claim the
8  Government attempts to distinguish *Hall* and *Comito* by arguing that these decisions do not apply
9  because they involved supervised release violation hearings and not detention hearings.  The
10 quick answer to this claim is the argument the defendant makes at some length in his original
11 papers; because a defendant is presumed innocent at a detention hearing, and because his liberty
12 interests are even more pronounced at a detention hearing, the rights which should be afforded a
13 defendant at such a hearing can be no less than those afforded a defendant at a supervised release
14 hearing.
15       In response to these arguments, the Government once again refers this Court to Judge
16 LaPorte's reasoning in *Henderson,* where she concluded that the due process right to confront
17 adverse witnesses only applies when there appears to be some issue about the validity of the
18 Government proffer – apparently when the defendant presents a counter-proffer of some sort
19 which calls into question the Government's hearsay assertions.  There are legal and practical
20 problems with this ruling.
21       As a legal matter, no court, and specifically the Supreme Court, has ever ruled that the
22 right to confrontation embodied in the due process clause requires a "counter-proffer" before it

---

[2] It should be noted that insofar as the Government feels free to cite unpublished decisions of other courts, this Court may wish to look at the record in *Henderson*.  The defendant there filed a motion to revoke Judge LaPorte's order, and asked Judge White to finally resolve the issues presented above.  The matter was fully briefed to Judge White by the defendant, and the Government, rather than respond to the defendant's arguments, made an offer to the defendant which quickly resolved the case, thereby avoiding a decision from Judge White.

DETENTION MEMORANDUM                4

1  becomes operative.  If that was the case, cross examination would only exist where the defendant
2  or another witness could directly contradict a prosecution witness, which is rarely the case.  The
3  majesty of confrontation does not arise from dueling affidavits; it flows from a defendant's right
4  to ask questions of a witness which show the many reasons why that witness's testimony may not
5  be accurate.  Moreover, when, for example, the only witness other than a police officer is the
6  defendant himself, to require the defendant to make a counter-proffer would require the defendant
7  to waive his fifth amendment right to remain silent.  Again, no court has ever held that a
8  defendant can secure his right to cross examine a witness only by relinquishing his right to
9  remain silent.
10      As a practical matter, detention hearings are held within three days of a defendant's first
11 appearance in court, and witnesses are not even identified by the parties prior to the hearing.  To
12 require a counter-proffer means that at some meaningful time before the detention hearing the
13 Government must tell the defendant what witness statements it plans to rely upon in its proffers so
14 that the defendant can attempt to interview the witness or investigate the assertions in time to
15 make a counter-proffer.  The magnitude of this undertaking is incredible.  Judge LaPorte
16 suggested, for example, that defense counsel proffer "a prior history of inaccurate statements
17 made by a particular arresting officer."  Order at 7.  This Court is certainly aware of the problems
18 associated with obtaining personnel records for officers which might identify past incidents of
19 lying under oath – problems which have caused this Court to promulgate a special rule that
20 requires a 10 day notice for subpoenas for such records.  To suggest that defense counsel obtain
21 those records and submit a counter-proffer in time for the Magistrate Judge to order the
22 Government to produce the witnesses at the detention hearing is simply not possible.  In contrast,
23 the Court could simply order the Government to have its witnesses present at the detention
24 hearing when the hearing is set at the initial appearance, or to have proof as to why, under the
25 *Comito* balancing test, the witness could not be produced in a timely fashion.  This procedure is
26 infinitely more workable than the alternative suggested by Judge LaPorte, and indeed appears to

DETENTION MEMORANDUM                5

be the system followed in virtually every other district in this circuit other than this one.

In short, as Judge Chen has ruled, the defendant has a due process right to confront adverse witnesses at a detention hearing. That right is not contingent upon any showing by the defendant, and is every bit as robust and meaningful as the rights set forth for defendants in the *Comito* and *Hall* cases.

### C. Discretion to Order Witnesses

The Government finally argues that this Court should not take the "extraordinary step" of ordering the Government to produce live testimony at the detention hearing, thereby changing a long-standing tradition in this district allowing the use of proffers in detention hearings.

The fact that the Government terms the defendant's request here "extraordinary" is exactly why the defendant is making the arguments he is making here. A huge percentage of defendants are detained in this district. The average time it takes a case to work its way through the Northern District is over nine months. It is therefore clear that a huge number of presumptively innocent defendants are having their liberty taken from them for a substantial period of time on the basis of a hearing at which they are afforded fewer rights that defendants already convicted of crimes and who enjoy a substantially more limited liberty interest.

More importantly, the logic of the entire proffer system set forth in the Bail Reform Act needs to be reexamined in light of recent trends regarding the importance of the right of confrontation. When Congress passed the Bail Reform Act, it indicated that proffers would be acceptable in some undefined way at a detention hearing. What Congress was essentially saying in this regard then was that hearsay was acceptable. However, unlike traditional hearsay exceptions which exist because there is some indicia of reliability in a statement which merits an application of the exception, the only reason to allow hearsay at a detention hearing is expediency. Considering the nature of the liberty interest at issue, and considering the fact that expediency should be the last reason why hearsay is admitted in a court proceeding, this Court should order the production of witnesses in its discretion regardless whether the Constitution otherwise

1 demands the production of such evidence.

2     For all of these reasons, the Court should grant the defendant's request to have the
3 Government produce the witnesses whose testimony it plans to rely upon to support its request for
4 detention.

5 DATED: June 06, 2007

7                                                   Respectfully submitted,

9                                                   BARRY J. PORTMAN
                                                  Federal Public Defender

10                                                         /s/

11                                                   GEOFFREY A. HANSEN
12                                                  Chief Assistant Federal Public Defender

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DETENTION MEMORANDUM                              7